## Roberts v. Stumbo.

### (Two Cases.)

(Decided June 27, 1928.)

(As Modified, on Denial of Rehearing, February 8, 1929.)

D. L. HAZELRIGG and J. B. CLARK for appellant.

A. J. MAY, J. W. HOWARD and TURNER & CREAL for appellee.

OPINION OF THE COURT BY COMMISSIONER HOBSON—Reversing.

Appellant and appellee were rival candidates for the office of circuit court clerk of Floyd county at the regular election held on November 8, 1927. On November 11th the election commissioners met and canvassed the returns, which showed a majority for appellee of something over 300 votes; they then made out and signed certificates of election in triplicate, and delivered them to the county clerk, directing the county clerk to deliver the certificate of election to appellee when he filed his postelection expense account. The election commissioners then adjourned, and they have had no meeting of the commission since. On November 19, 1927, appellant instituted the first of the above actions contesting the election of appellee. Appellee filed a special demurrer and a plea

to the jurisdiction of the court on December 7th. In his plea to the jurisdiction of the court, it was alleged that on November 24, 1927, and within 30 days after the election, appellee filed his postelection statement as required by law, and on that day the election commissioners issued and delivered to him a certificate of election. On December 15, 1927, appellant filed the second of above actions contesting the election of appellee, charging, in substance, that by a fraudulent conspiracy the fact that appellee had filed his postelection expense account and had received the certificate of election was concealed from appellant, and no record was made of either, and that appellant did not learn these facts until December 7th. Appellee by appropriate pleadings insisted that the first action was prematurely brought and that the second action was not brought within 10 days after the final action of the board of canvassers. The circuit court dismissed both actions on these grounds. The contestant appeals. The statutes regulating the subject are in these words:

> "The board shall choose one of its members secretary, who shall keep a record of its proceedings, which shall be a public record and kept in the office of the county court clerk. . . .
>
> "Due notice, in writing, of every meeting of said board shall be given to each member thereof." Section 1596a, subsec. 2, Ky. Stats.
>
> "Within two days next after an election the sheriff shall deposit with the clerk of the county court the returns from the different precincts. On the next day the said county board of election commissioners shall meet in the county clerk's office between ten and twelve o'clock in the morning, open and canvass the returns of such election, and give triplicate or more written certificates . . . of those who have received the highest number of votes of the county, one copy of the certificate to be retained in the clerk's office, another delivered to each of the persons elected, and the other forwarded by the county clerk to the secretary of state at the seat of government." Section 1596a, subsec. 5, Ky. Stats.
>
> "The contest shall be made by the filing of a petition in the circuit court of the county where the contestee resides, except where the officer is one elective by the voters of the whole state, in which event

the petition shall be filed in the Franklin circuit court. Such petition shall be filed and process issued in the case of an officer elective by the voters of the whole state or any district comprising more than one county, within thirty days after the final action of the board of canvassers, and in case any other office, within ten days after such action; and shall state the grounds of the contest relied on, and no other grounds shall afterwards be relied upon." Ky. Stats., sec. 1596a12.

"Every candidate, as previously mentioned, in this act, and every campaign committee, person or persons in charge of said campaign, shall, within thirty days after the election, caucus, convention or primary election held to fill any office or place for which such person may be a candidate, make out and file with the officers above mentioned a statement subscribed and sworn to as indicated in previous sections, which statement shall set forth in detail all sums of money contributed, disbursed, expended or promised by him, and to the best of his knowledge and belief, by any person in his behalf, wholly or in part." Ky. Stats., sec. 1565b6.

"No officer or board authorized by law to issue certificates of election or nomination shall issue any such certificates to any person until the statements required by this act shall have been made and filed as required." Ky. Stats., sec. 1565b7.

The first question presented is, was action No. 1638 filed on November 19th premature? It will be observed that by the statute it is made the duty of the election commissioners to meet in the county clerk's office between 10 and 12 o'clock in the morning on the next day after the time allowed the sheriff to deposit with the clerk the returns from the different precincts, and it is made the duty of the board then to open and canvass the returns of the election and give triplicate, or more, written certificates of those who have received the highest number of votes for any office; one copy of the certificate to be retained in the clerk's office, another delivered to each of the persons elected, and the other forwarded by the county clerk to the secretary of state at Frankfort, Ky. In Broaddus v. Mason, 95 Ky. 421, 25 S. W. 1060, 16 Ky. Law Rep. 38, and Colvin v. Mills, 214 Ky. 812, 284 S. W.

115, it was held that the final action of the board is the act of issuing the certificate of election. The purpose of requiring the board to file a copy of this certificate with the county court clerk is to furnish a record of their action so that the contestant may know his rights. Only 10 days are allowed for a contest, and the plain purpose of the statute was to provide a record in the county clerk's office by which the contestant would be informed as to the action of the board. He is not required to make inquiry elsewhere than at the clerk's office. The record in the clerk's office sets the statute in motion against him, and he is required to take notice of this paper when filed there. The statute runs from the time that the board makes the certificate, and delivers it to the county clerk. The trouble with the statute has arisen from the provisions of the Corrupt Practices Act, section 1565b, subsections 6 and 7. See Session Acts 1916, p. 53. This act was passed since section 1596a, which is an act of October 24, 1900. By the Corrupt Practice Act the certificate of election may not be delivered to the person elected until he has filed his postelection expense account, and by that act a candidate is given 30 days after the election to file such statement. But, while the certificate of election may not be delivered to the candidate until he has filed his postelection expense account and he has 30 days to file it, this only affects so much of the act of 1900 as provided for the delivery of the certificate of election to the candidate. It leaves unaffected the provision of the act of 1900 that the board shall give certificates in triplicate and file two copies with the county clerk. Under the acts read together it is clear that the board takes its final action when it canvasses the returns and makes out the certificates and delivers them to the county clerk. Under section 1565b, subsecs. 4 and 5, a county candidate must file his pre-election expense account with the county clerk and his postelection expense account "with the chairman of the board authorized to issue the certificate of election after a final election." Hoskins v. McGuire, 194 Ky. 785, 241 S. W. 55. The chairman keeps no official record of his proceedings. The board completes its work when it canvasses the returns, issues the certificates and files them with the county clerk. It is no part of the duty of the board to receive the postelection expense account. Subsection 7 of section 1565b must be read with the other provisions above quoted.

The board is not required to remain in session during the 30-day period within which the candidates must file their expense accounts, in order that it may deliver to the successful candidate a copy of the certificate to which he is entitled when he files his expense account. The board is given no discretion to determine whether or not the expense account offered to be filed by the successful candidate is correct or sufficient. The delivery of a copy of the certificate to the candidate, therefore, is not the performance of an official duty involving the exercise of discretion, and this duty may be delegated to another. The proper person to perform this duty, as the agent of the board, is either the chairman of the board, with whom the expense account must be filed, or the county clerk, who is the custodian of the statement after it has been filed.

The Corrupt Practice Act left the statute defining the duties of the board unaffected, except the provision that one copy of the certificate should be "delivered to each of the persons elected." It is still their duty to meet at the time fixed in the statute, "open and canvass the returns of such election, and give triplicate or more . . . certificates of . . . those who have received the highest number of votes for any office exclusively within the gift of the voters of the county, one copy of the certificate to be retained in the clerk's office." Ky. Stats., sec. 1596a5. This certificate in the office of the county clerk is the public record of the action of the board, and, when the certificate is filed with the county clerk, the 10 days within which a contest must be instituted begins to run. The successful candidate does not receive his certificate until he files with the chairman of the board his postelection expense account. But this is a matter entirely beyond the jurisdiction of the board and with which the board has no concern. The duties of the board end when it issues and files the triplicate certificates with the county clerk. When the successful candidate shall receive his certificate depends upon his own volition in a large measure, but what course he shall pursue in no wise affects the rights of the unsuccessful candidate, whose right to contest accrues when the certificate of the board is issued and filed with the county clerk.

It is the duty of the board under section 1596a "to give triplicate or more written certificates . . . of

those who have received the highest number of votes,'' when they have canvassed the returns of the election. This is their final action. The certificates are given when they are filed with the clerk, and it is their duty to so file them when they have canvassed the returns. A copy of the certificate, under section 1565b, may not be delivered to the successful candidate who has not filed his post-election expense account, and so this copy, under the two sections read together, must, like the other two copies, be filed with the county clerk; for the certificates are not given until they are delivered .in some way, and the board's record must be kept in the county clerk's office. It is the duty of the county clerk to indorse the papers filed when received by him, and he should forward one copy to the secretary of state and deliver the certificate to the successful candidate when he has filed his post-election expense account with the chairman of the board, who should then file same with the county clerk, for it is the plain purpose of the statute that all of this should be a matter of record, to sustain the clerk's action.

The statutes do not contemplate that the final action of the board shall be held up until the candidate has filed his postelection expense account, for this might postpone the final ascertainment of the result of the election for 30 days, and no contest could be filed until then. It was not intended to give the successful candidate any such power to postpone a contest, or to leave the defeated candidate in doubt when his right to begin his contest accrues. The candidate cannot, under subsection 7 of section 1565b, receive his certificate of election until he files his postelection expense account. He should then receive the paper from the county clerk, who should hold it from the time the board acts until then. This is the necessary meaning of the above provisions read together. The plain purpose of the statute in limiting a contest to 10 days after the final action of the board would be defeated, if it was held that the right of contest did not accrue until the postelection expense account was filed.

In like manner, where the state board canvasses the returns, the candidate should file his pre-election expense account with the secretary of state and his postelection expense account with the chairman of the board of canvassers, who should file it with the secretary of state, and

the latter should then deliver to the candidate his certificate of election.

In Lilly v. O'Brien, 6 S. W. (2d) 715, decided March 6, 1928, the canvassing board certified in triplicate the result of the election, but the certificates were left in the form book and retained in the control of the board until November 18, when O'Brien filed his expense account, and thereupon a certificate of election was given to him and the other two certificates were lodged with the clerk, one to be retained there and the other forwarded to the secretary of state at the seat of government as directed by the statute. In an amended petition, filed 3 days later, the contestant, Lilly, alleged that the certificate of election had been issued to the defendant by the board of canvassers. The decision rests on the ground that the facts showed that the board did not take final action until November 18, or intend what they did before that time to be final. Here the action was final, and was so intended by the board.

It is the duty of the board to keep a record of its proceedings. This is a public record, and is to be kept in the county clerk's office. A called or special meeting of the board can only be held on notice to all the members, and any such action taken by two members at such a meeting without notice, or his presence, is void. 13 C. J. p. 500; Scott v. Pendley, 114 Ky. 606, 71 S. W. 647, 24 Ky. Law Rep. 1431; Short v. Langston, 125 Ky. 816, 102 S. W. 236, 31 Ky. Law Rep. 388. The certificate given to appellee on November 24, 1927, by two members of the board, without notice to the third member, was of no validity.

It follows that the action instituted by appellee on November 19, 1927 (No. 1638), was not premature, and that the circuit court erred in dismissing the action. It also follows that the second action instituted December 15, 1927 (No. 1663), was not begun in 10 days after the final action of the board, and was properly dismissed.

The judgment in the first case is reversed, and the cause remanded for further proceedings consistent herewith. The judgment in the second case is affirmed.

Whole court sitting.